Betsy Jaeger **WEINREB**, a/k/a Bozena Jaeger, individually and as administratrix of the Estate of Herman Weinreb, Plaintiff,

v.

**HOSPITAL FOR JOINT DISEASES ORTHOPAEDIC INSTITUTE,** Defendant.

No. 02 Civ. 9819JSR.

United States District Court, S.D. New York.

Sept. 25, 2003.

Jeffrey I. Pasek, Cozen & O'Connor, New York City, for plaintiff.

Frederick A. Brodie, David R. Lagasse, Mary K. Tomback, Pillsbury Winthrop LLP, New York City, for defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiff Betsy Jaeger Weinreb, widow of Dr. Herman Weinreb, here sues her husband's former employer for life insurance benefits and other relief pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Following the completion of discovery, plaintiff moved for summary judgment on Counts 1 and 2, and defendant moved for summary judgment on all counts.

The relevant facts, either as undisputed or, where disputed, taken most favorably to the non-moving party, are as follows. In April 1998, defendant Hospital for Joint Diseases Orthopaedic Institute (the "Hospital") approached Dr. Herman Weinreb about becoming the Hospital's Chief of the Department of Neurology. On April 2, 1998, the Hospital provided Dr. Weinreb with a packet of pre-employment forms. *See* Declaration of Gladys Colon, sworn to July 16, 2003 ("Colon Decl."), ¶ 14. As a matter of practice, that packet would have included an "Insurance Enrollment Form" (the "Enrollment Form") for the Hospital's Massachusetts Mutual life insurance program (the "Plan"), as well as other benefit enrollment forms, a confidentiality statement, a veteran's employment survey, a W-4 tax form, an Employee Information form, a receipt for the Hospital's Employ-

ee Handbook,[1] and a direct deposit enrollment form. Colon Decl. ¶¶ 11–14; Deposition of Gladys Colon ("Colon Dep."), Def.'s Ex. J, at 28–30. That very day, Dr. Weinreb submitted the confidentiality statement, the veteran's employment survey, the W–4 form, the employee information form, the receipt for the Employee Handbook, and the direct deposit enrollment form. *Id.* ¶ 14 & Ex. B. Dr. Weinreb acknowledged various "health insurance options" in a letter dated the next day, Def.'s Ex. O, and submitted a health insurance enrollment form later that month, Def.'s Ex. P.

Later that month, the Hospital sent Dr. Weinreb's counsel a letter "describing the fringe benefits available" to Dr. Weinreb, including "Life Insurance 2 1/4 × salary— Mass Mutual (portable)." Pasek Aff., Ex. J–21. On or about May 21, 1998, the Hospital and Dr. Weinreb entered into an Employment Agreement that provided that Dr. Weinreb "shall receive employee benefits as provided to full-time employment physicians of the Hospital in [his] classification." Pasek Aff. Ex. L at 55.

Dr. Weinreb began work for the Hospital on June 1, 1998. In August 1998, in addition to the forms he had already submitted, Dr. Weinreb submitted an enrollment form for prescription drug coverage. Def.'s Ex. Q. On December 11, 1998, Gladys Colon, a Human Resources Specialist, sent Dr. Weinreb a memo reminding him that he had not yet completed the enrollment forms for a tax-sheltered annuity program for which he was eligible, Colon Decl. ¶ 20 & Def.'s Ex. D. He subsequently enrolled in the program, Def.'s Ex. R.

On March 1, 1999, Colon wrote Dr. Weinreb to indicate his employee file was "incomplete" because two forms were not filled out: one for "Life Insurance," and one for "CIGNA Dental." Colon Decl. ¶ 20 & Def.'s Ex. E. Subsequently, when Dr. Weinreb returned the dental insurance enrollment form, Def.'s Exs. S, T, but not the life insurance Plan Enrollment Form, Colon called Dr. Weinreb and reminded him to submit the form, which Dr. Weinreb said he would do, Colon Dep., Def.'s Ex. J, at 42–44.

On October 14, 1999, Colon sent Dr. Weinreb an additional memorandum which read as follows:

> Our records still indicate that you still have not submitted your enrollment form for Mass Mutual Life Insurance. I am once again enclosing a form for you to complete and return to me as soon as possible.

Def.'s Ex. F.

Dr. Weinreb never completed or returned the Enrollment Form for the Plan.[2] Colon Decl. ¶ 22. The Hospital never submitted Dr. Weinreb's name to Mass Mutual as an eligible physician and never paid

---

1. The Hospital's Employee Handbook contained the following passage:
   > The Hospital provides all non-union employees who work twenty hours or more per week with major medical/surgical, hospitalization, dental and life insurance coverage. The Human Resources Department will explain the effective dates of coverage, information regarding the Plans, [and] employee contribution costs, as well as provide[] you with application and claim forms.

Affirmation of Jeffrey L. Pasek, executed July 17, 2003 ("Pasek Aff.") Ex. J–19 at 11.

2. Although plaintiff attempts to dispute this, contending that certain deposition testimony suggests that at least a partially completed enrollment form was in Dr. Weinreb's personnel file, the cited testimony, read in context, *does not reasonably bear this inference. See* Deposition of Gary Rosenberg, Def.'s Ex. HH, at 41–43, 56–57.

premiums on his behalf. Def.'s L.R. 56.1(b) St. ¶¶ 43, 46.

The Hospital's agreement with Mass Mutual, as embodied in an Administration Manual, provided that the Enrollment Form "[m]ust be filled out *completely* and *signed* by the insured . . . ." for life insurance coverage to be effective. Def.'s Ex. H at 2.1; *see also id.* at 1.1; Pl.'s L.R. 56.1(a) St. ¶ 46.

Dr. Weinreb never received a summary plan description of the life insurance program because none was ever created. Def.'s L.R. 56.1(b) St. ¶¶ 106–09.

In December 1999, Dr. Weinreb resigned his position at the Hospital. On either March 1 or April 1, 2000, the Hospital terminated the Plan, and on April 14, 2000, Dr. Weinreb died. On December 20, 2000, his widow, after various oral communications with Hospital officials and others in which she was told that Dr. Weinreb did not have life insurance through the Hospital, e-mailed Dr. Gary Rosenberg, then-Senior Vice President of Mount Sinai NYU Health, and expressly requested, in her capacity as administratrix of Dr. Weinreb's estate, "to see . . . the [life insurance] plan that was in effect in June 1998." Pasek Aff. Ex. J–25. The only documents the Hospital ever provided, however, were the two memos Ms. Colon sent to Dr. Weinreb concerning the Enrollment Form. Def.'s L.R. 56.1(b) St. ¶¶ 180–81.

Against this background, Mrs. Weinreb, in addition to seeking penalties for the Hospital's failure to provide plan information (Count 1), *see* 29 U.S.C. § 1132(a)(1)(A), sues to recover the benefits that she alleges would have been due

under the Plan had Dr. Weinreb completed the Enrollment Form (Count 2),[3] *see* 29 U.S.C. § 1132(a)(1)(B), equitable relief in the form of her dead husband's enrollment *nunc pro tunc* in the (now-terminated[4]) Plan (Count 3), *see* 29 U.S.C. § 1132(a)(3), damages for the Hospital's alleged breach of fiduciary duty (Count 4), *see id.*, and life insurance benefits under a theory of promissory estoppel (Count 5).

■ At the outset, it may be noted that plaintiff lacks standing in her individual capacity to bring any of these claims. Having never worked for the Hospital, she is not a participant, *see* 29 U.S.C. § 1002(7), and there is no dispute she was never designated a beneficiary by either Dr. Weinreb or the terms of the Plan, *see* 29 U.S.C. § 1002(8); Pl.'s L.R. 56.1(b) St. ¶ 21. Accordingly, Mrs. Weinreb may not sue in her individual capacity. *See* 29 U.S.C. § 1132(a)(1), (3); *Coleman v. Champion Int'l Corp./Champion Forest Products,* 992 F.2d 530, 532–34 (5th Cir. 1993); *Weber v. Damin Sales, Inc.,* 106 F.Supp.2d 459, 460 (E.D.N.Y.2000).

■ There is no dispute, however, that as administratrix, Mrs. Weinreb has standing to bring each of the counts in the Amended Complaint, to the merits of which we now turn.

■ As a general rule, a suit for benefits due under the terms of a plan must fail where the participant does not qualify for those benefits. *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 142 (2d Cir. 1999). Here, the unambiguous language of the governing Plan documents makes clear that submission of a signed enrollment form is a prerequisite to life insurance

---

**3.** While defendant contends that, even if Dr. Weinreb had completed the Enrollment Form, his failure to file a "conversion form" and assume premium payments after he left defendant's employ likewise renders him ine-

ligible for benefits under the Plan, the Court, given its disposition below, need not reach this argument.

**4.** *See* Def.'s L.R. 56.1(b) St. ¶ 22.

coverage.[5] Plaintiff argues, however, that any so-called Enrollment Form requirement cannot be held binding on Dr. Weinreb, because the requirement was not communicated to Dr. Weinreb in any summary plan description and, moreover, was waived by the Hospital.

It is true that when Dr. Weinreb began work for the Hospital on June 1, 1998, he was eligible for the Hospital's life insurance plan, 29 U.S.C. § 1002(7), and was then entitled to receive from the plan administrator a summary plan description outlining, *inter alia*, "the plan's requirements respecting eligibility for participation and benefits" and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," 29 U.S.C. §§ 1022, 1024(b)(1). Since the Hospital was the plan's sponsor, and the Hospital never delegated its responsibilities as such, the Hospital was the plan administrator for purposes of ERISA. *See* 29 U.S.C. § 1002(16).

■ Nevertheless, even where an administrator fails to inform a participant of a requirement through a summary plan description, the administrator may avoid liability by showing that any error was harmless, *e.g.*, by showing that the employee had actual knowledge of the requirement. *See Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 113–14 (2d Cir.2003). Here, on at least three occasions the Hospital told Dr. Weinreb to complete the document clearly marked "Insurance Enrollment Form," and there is no dispute that he received the form two, if not three, times. After two written memoranda and a phone call, no reasonable person in Dr. Weinreb's position could disclaim knowledge that completion of that form was a prerequisite to coverage, especially in light of the evidence that Dr. Weinreb twice responded to Gladys Colon's reminders by submitting other missing forms. Thus, while there can be no dispute that the Hospital was legally required to provide Dr. Weinreb with a summary plan description, its failure to do so caused no prejudice.

■ Nor did the Hospital waive the requirement that Dr. Weinreb complete and sign the Enrollment Form. Although plaintiff points to evidence that the Hospital overlooked certain other procedural irregularities in the cases of certain other employees, *see* Def.'s L.R. 56.1(b) St. ¶¶ 47–48, plaintiff has pointed to no evidence that, during the relevant period, any employee was enrolled in the Plan without having submitted a signed Enrollment Form.[6] Nor has plaintiff submitted any evidence that the Hospital ever took any action to waive the requirement in Dr. Weinreb's case, unlike the situations in certain reported decisions upon which plaintiff relies. *See Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 380–82 (2d Cir.2002); *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 356–57 (5th Cir.1991); *Russo v. Abington Memorial Hosp.*, No. CIV 94–195, 2002 WL 1906963, at *4, 10–13 (E.D.Pa. Aug.01, 2002).

■ Plaintiffs' claims for equitable relief (Count 3) and breach of fiduciary duty (Count 4), which appear to collectively

---

5. Although various Hospital documents indicate that life insurance coverage is effective upon the date of hire, *see, e.g.*, Supplemental Pasek Affirmation, dated July 31, 2003 ("Pasek Supp. Aff."), Exs. J–7, J–13, nothing in those documents suggests that coverage is not contingent upon other conditions, such as the timely completion of an enrollment form.

6. Colon's deposition testimony that an employee did not need to sign as both the insured and the owner does not alter this finding, given the unambiguous instructions of the form. *See* Colon Dep. at 128; Def.'s Ex. A.

state a single claim under 29 U.S.C. § 1132(a)(3), likewise fail. Assuming *arguendo* that the Hospital, as administrator, was a fiduciary of the Plan, *see Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein,* 107 F.3d 139, 141–42 (2d Cir.1997), it is clear that the Hospital did not breach any duty. Although in certain circumstances the failure to distribute a summary plan description, as required by law, may amount to a breach of fiduciary duty, *see, e.g., Lee v. Burkhart,* 991 F.2d 1004, 1011 (2d Cir.1993); *Simeon v. Mount Sinai Medical Center,* 150 F.Supp.2d 598, 603 (S.D.N.Y.2001), plaintiff has pointed to no authority that a failure to provide a summary plan description is a breach *per se.* Consonant with the requirement that a plan participant show likely prejudice in order to recover under § 1132(a)(1)(B), no breach occurred here where the Hospital took more than adequate steps to inform Dr. Weinreb both of his eligibility for life insurance and of the requirement that he complete the Enrollment Form.

▮ Moreover, it would appear that even if the Hospital breached a fiduciary duty, § 1132(a)(3) cannot provide plaintiff with a remedy. Although Count 3 purports merely to request an injunction directing the Hospital to enroll Dr. Weinreb *nunc pro tunc* in the Plan, *see* Count 3 ("Wherefore" clause), this is a thinly disguised attempt to recover the money that Dr. Weinreb's estate (or his widow) would have been paid had he completed the Enrollment Form.[7] *See Gerosa v. Savasta &*

*Co.,* 329 F.3d 317, 321 (2d Cir.2003) ("In determining the propriety of a remedy, we must look to the real nature of the relief sought, not its label."). Such compensatory damages, even if they resulted from a breach of fiduciary duty, are not recoverable as equitable relief under § 1132(a)(3). *See Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 212–16, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002); *Rego v. Westvaco Corp.,* 319 F.3d 140, 144–46 (4th Cir. 2003); *De Pace v. Matsushita Elec. Corp. of America,* 257 F.Supp.2d 543, 560–65 (E.D.N.Y.2003); *Bona v. Barasch,* No. 01 Civ. 2289, 2003 WL 1395932, at *10–12, (S.D.N.Y. Mar 20, 2003); *Kishter v. Principal Life Ins. Co.,* 186 F.Supp.2d 438, 444–45 (S.D.N.Y.2002); ); *Augienello v. Coast–to–Coast Fin. Corp.,* No. 01 Civ. 11608, 2002 WL 1822926, at *5–6 (S.D.N.Y. Aug.7, 2002).

▮ Nor can plaintiff recover under a promissory estoppel theory (Count 5), for at no point did the Hospital ever promise Dr. Weinreb that he would have life insurance even if he did not fill out the Enrollment Form. Only those actions that a defendant "reasonably should have expected to induce action or forbearance" are sufficient to make out a promise for these purposes. *Schonholz v. Long Island Jewish Medical Center,* 87 F.3d 72, 79 (2d Cir.1996). In light of the repeated efforts by Colon to get Dr. Weinreb to complete the Enrollment Form, there is no basis for the inference that Dr. Weinreb was promised life insurance benefits without any action on his part.[8] While Dr. Weinreb's

---

7. Even if this were not the case, the Court could not grant the relief sought because the Hospital is powerless to comply. *See* 4 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 1405b, at 1046–47 (photo. reprint 1994) (1941). At all relevant times, Mass Mutual was responsible for processing and accepting life insurance applications. *See* Def.'s Ex. I at 1.1. At no point could the

Hospital unilaterally enroll an employee in the Plan. (Much less could it do so now that the Plan has been terminated.)

8. Neither a memorandum generally addressed to all full-time employees, which made no reference to the Plan, much less to Dr. Weinreb's participation in it, Pasek Supp. Aff. Ex. K–1, nor other information concern-

W-2 tax forms for two years indicated that he was taxed as if he were enrolled in the Plan, nothing on the forms themselves (which contained the notations, "C 802.85" and "C 1338.25"), nor anything else in the record, supports the inference that Dr. Weinreb knew he was being taxed as if he were enrolled. Pasek Aff. Ex. L at 2729, 2720. Accordingly, nothing the Hospital did supports plaintiff's recovery under a theory of promissory estoppel, nor is this case one whose facts contain the "extraordinary circumstances" that would justify such recovery. *Schonholz,* 87 F.3d at 78.

 Plaintiff is, however, entitled to summary judgment in her favor on Count 1 as to defendant's liability for failing to provide plan information pursuant to 29 U.S.C. §§ 1132(c)(1)(B), 1024(b)(4). As the Plan administrator, the Hospital was required to provide Mrs. Weinreb with information in her capacity as the representative of a participant, notwithstanding the fact that the Plan was terminated by this point or that Dr. Weinreb was, at this point, a former employee. *See Vogel v. Independence Federal Sav. Bank,* 728 F.Supp. 1210, 1227 (D.Md.1990). What penalty, if any, the Court should award is deferred until a factual hearing, *see Lidoshore v. Health Fund 917,* 994 F.Supp. 229, 235-36 (S.D.N.Y.1998), where the Court will be in a better position to evaluate the relevant factors, *see McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund,* 320 F.3d 151, 162 (2d Cir. 2003).

Accordingly, defendant's motion for summary judgment in its favor is granted as to Counts 2-5 of the Amended Complaint but denied as to Count 1, while plaintiff's motion for summary judgment in her favor is granted as to defendant's lia-

bility under Count 1, but is in all other respects denied. Counsel are hereby instructed to jointly call Chambers at 1:00 p.m. on Thursday, October 2, 2003 to schedule an evidentiary hearing to determine the appropriate penalty, if any, under Count 1.

SO ORDERED.

---

ing a different life insurance plan, *see* Deposition of Todd Silver, Def.'s Ex. JJ, at 44–50,

supports a contrary inference.