**Betsy Jaeger WEINREB,**
**Plaintiff–Appellant,**

v.

**HOSPITAL FOR JOINT DISEASES**
**ORTHOPAEDIC INSTITUTE,**
**Defendant–Appellee.**

**Docket No. 03–9347.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 4, 2004.

Decided April 8, 2005.

Jeffrey I. Pasek, Cozen O'Connor, Philadelphia, PA, for Plaintiff–Appellant.

David R. Lagasse (Frederick A. Brodie, Mary K. Tomback, M. Alexis Pennotti, Pillsbury Winthrop LLP, on the brief), New York, NY, for Defendant–Appellee.

Before: WALKER, Chief Judge, FEINBERG and WESLEY, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Plaintiff-appellant Betsy Jaeger Weinreb, widow of Dr. Herman Weinreb, appeals from the November 24, 2003, final judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge* ) granting partial summary judgment to defendant-appellee Hospital for Joint Diseases Orthopaedic Institute (the "Hospital"), *see Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 285 F.Supp.2d 382, 389 (S.D.N.Y.2003), and judgment to Mrs. Weinreb on the remaining claim. Mrs. Weinreb brought suit against the Hospital, her husband's former employer, for life-insurance benefits and other relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The district court held, *inter alia,* that Dr. Weinreb's widow had no claim for life-insurance benefits because Dr. Weinreb had not submitted the required enrollment form. The district court found that although the Hospital, as plan administrator, had failed to provide Dr. Weinreb with a statutorily required Summary Plan Description ("SPD"), which would have set out the enrollment requirement, Dr. Weinreb had actual knowledge of the requirement. *Weinreb,* 285 F.Supp.2d at 387. Applying the standard we adopted in *Burke v. Kodak Retirement Income Plan,* 336 F.3d 103, 112–13 (2d Cir.2003), *cert. denied,* 540 U.S. 1105, 124 S.Ct. 1046, 157 L.Ed.2d 890 (2004), the district court concluded that Dr. Weinreb was not prejudiced by the absence of the SPD, and thus that the enrollment requirement should not be excused. *Weinreb,* 285 F.Supp.2d at 387. The district court also rejected plaintiff's promissory-estoppel claim. *Id.* at 388–89. We affirm.

## BACKGROUND

The facts and procedural history of this case are set forth in the district court's thorough opinion. *See id.* at 384–86. We therefore recite only those facts that are relevant to this appeal.

In April 1998, the Hospital recruited Dr. Weinreb to be Chief of its Neurology Department. It provided him with a packet of preemployment forms, including a life-insurance enrollment form; he completed and returned most of the forms the same day and turned in a health-insurance form later that month. On April 16, 1998, Dr. Weinreb signed up for a $500,000 life-insurance policy sponsored by the American Medical Association ("AMA"), which was separate from any benefits offered by the Hospital. He began work at the Hospital on June 1, 1998. A few months later, he submitted a form for prescription-drug coverage. On December 11, 1998, Gladys Colon, a human-resources specialist at the Hospital, sent Dr. Weinreb a memorandum reminding him that he had not yet enrolled in a tax-sheltered annuity plan. He subsequently remitted the appropriate form for that plan.

Relevant to this appeal, however, Dr. Weinreb never submitted the enrollment form required under the Hospital's Mass Mutual life-insurance plan ("the Plan"), despite repeated reminders. On March 1, 1999, Colon wrote to Dr. Weinreb, advising him that his employee file was "incomplete" because he had yet to fill out both his life-insurance and dental-insurance enrollment forms. In response, Dr. Weinreb sent a letter enclosing his completed dental form, without referring to the life-insurance form. A few days later, Colon followed up with a phone call to remind him to submit the life-insurance paperwork. Dr. Weinreb told her that he would do so, but never did. Thereafter, Dr. Weinreb failed to renew his AMA life-insurance policy, which lapsed on July 1, 1999. On October 14, 1999, Colon sent

another memorandum to Dr. Weinreb that stated: "Our records still indicate that you still have not submitted your enrollment form for Mass Mutual Life Insurance. I am once again enclosing a form for you to complete and return to me as soon as possible." Dr. Weinreb did not submit the form.

■ In December 1999, Dr. Weinreb resigned his position at the Hospital, and he died unexpectedly on April 14, 2000. After being informed that her husband did not have life insurance through the Hospital, Mrs. Weinreb brought this ERISA action claiming these benefits. We review *de novo* the district court's entry of summary judgment in favor of the Hospital. *See, e.g., Burke*, 336 F.3d at 109; *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.2003).

### DISCUSSION

#### I. *ERISA Claim*

The principal question before this court is whether Dr. Weinreb's failure to enroll in the Plan should be excused because the Hospital did not provide him with an ERISA-mandated Summary Plan Description. Mrs. Weinreb argues that the Hospital's lapse is fatal to its defense that her husband, by not submitting the required form, did not qualify for the Plan.

■ An ERISA benefit-plan administrator has a duty to provide an SPD to its participants setting forth information such as the name and type of benefit plan, the plan's requirements with respect to eligibility for participation and benefits, and circumstances that may result in disqualification, ineligibility, or denial or loss of benefits. 29 U.S.C. §§ 1021(a), 1022, 1024(b). In fulfilling this duty, an administrator must also "make reasonable efforts to ensure each plan participant's actual receipt of the plan documents."

*Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 208 (2d Cir.2003). Moreover, where there is a conflict between the terms of the plan itself and the SPD, the terms of the SPD govern. *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907–08 (2d Cir.1990). This rule makes sense because "the statute contemplates that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Id.*

Despite ERISA's statutory requirements, the Hospital did not create or provide an SPD. In addition, Dr. Weinreb was not aware of the administration manual that Mass Mutual's predecessor, Connecticut Mutual Life Insurance Company, supplied to the Hospital at the time it undertook to insure benefits payable under the Plan. This manual set forth three conditions for coverage: (1) the participant had to fill out, execute, and submit an enrollment form; (2) the enrollment form had to be approved by Mass Mutual; and (3) the Hospital had to pay the initial premium. It is undisputed that none of these conditions were fulfilled, and, as a result, Dr. Weinreb never officially enrolled in the Hospital's life-insurance program.

A suit for benefits due under the terms of an ERISA-governed plan necessarily fails where the participant does not qualify for those benefits, 29 U.S.C. § 1132(a)(1)(B); *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142 (2d Cir.1999), and the Hospital argues that Dr. Weinreb's failure to enroll precluded him from qualifying for the Plan's benefits. Mrs. Weinreb contends, as she did below, that because no SPD was created or distributed, and because independent evidence of the enrollment-form requirement was inconclusive, this prerequisite should not apply. Moreover, she maintains that the informa-

tion provided and available to her husband was misleading because it implied that enrollment was automatic and that he did not need to fill out a form.

Judge Rakoff relied upon our decision in *Burke* to conclude that "even where an administrator fails to inform a participant of a requirement through a summary plan description, the administrator may avoid liability by showing that any error was harmless." *Weinreb*, 285 F.Supp.2d at 387. In *Burke*, the plan administrator had failed to include in the relevant portion of its SPD the requirement that the claimant submit a domestic-partnership affidavit to obtain survivorship-income benefits. *Burke*, 336 F.3d at 106. The SPD listed this affidavit as a condition for sixteen other available benefits, but omitted it for survivorship-income benefits. We concluded that, for liability to attach, a claimant must demonstrate likely prejudice resulting from the deficiency in the SPD:

> Cognizant of ERISA's distribution of benefits, we require, for a showing of prejudice, that a plan participant or beneficiary was *likely* to have been harmed as a result of a deficient SPD. Where a participant makes this initial showing, however, the employer may rebut it through evidence that the deficient SPD was in effect a harmless error.

*Id.* at 113 (emphasis in original).

■ Mrs. Weinreb argues that no prejudice showing should be required when the employer fails to develop, much less provide to its employees, an SPD. We disagree. Although *Burke* only addressed the standard to be applied where the SPD is deficient, we now apply the principle in *Burke* to these facts and hold that an ERISA claim premised on the complete absence of an SPD also requires a showing of likely prejudice. The inquiry in either case is the same. In both situations, the plan administrators have failed to fulfill ERISA's statutory mandate that they apprise participants of coverage conditions. *See id.* ("The statute and the DOL regulations place the burden on employers to draft an SPD that is accurate, comprehensible, and clear regarding restrictions on eligibility for benefits. The consequences of an inaccurate SPD must be placed on the employer. The individual employee is powerless to affect the drafting and less equipped to absorb the financial hardship of the employer's errors." (internal citations omitted)). An SPD that is deficient only as to a particular requirement communicates that requirement no better than a wholly missing summary description, and both threaten the same harm to employees. Also, dispensing with any showing of prejudice in the latter situation would afford unjustified windfalls to employees or their successors who knowingly fail to qualify for plans. Thus, we hold that the prejudice analysis articulated in *Burke* applies where *no* SPD has been distributed.[1]

■ We further hold that Dr. Weinreb suffered no prejudice from the absence of an SPD. The district court properly found that the Hospital's repeated efforts to prompt Dr. Weinreb to fill out the enrollment form were sufficient to place Dr. Weinreb on actual notice of the Plan's enrollment requirement. *See Weinreb*, 285 F.Supp.2d at 387 (citing *Burke*, 336 F.3d at 113–14). Where a plan administrator fails to fulfill its statutory duty of furnishing an SPD, but where the evidence shows that the claimant had actual knowledge of the requirement at issue,

---

1. We note that an employer's failure to provide an SPD may be cognizable as a separate claim for breach of fiduciary duty. *See Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir.1993); *Simeon v. Mount Sinai Med. Ctr.*, 150 F.Supp.2d 598, 603 (S.D.N.Y.2001). But in this case, the breach-of-fiduciary-duty claim was dismissed below, *see Weinreb*, 285 F.Supp.2d at 387–88, and that dismissal has not been appealed.

any error is necessarily harmless. See Burke, 336 F.3d at 114 (noting that defendant could rebut presumption of likely prejudice by showing that plaintiff was aware of requirement). Although ERISA's SPD requirement places the burden of communicating eligibility conditions on the employer, see 29 U.S.C. § 1021(a); Burke, 336 F.3d at 113, it would be unfair to hold the employer liable when a claimant fails to adhere to a known plan requirement through "procrastination," "indecision," or the like, *Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan,* 81 F.3d 335, 341 (3d Cir.1996).

"[O]n at least three occasions the Hospital told Dr. Weinreb to complete the document clearly marked 'Insurance Enrollment Form,' and there is no dispute that he received the form two, if not three, times." *Weinreb,* 285 F.Supp.2d at 387. The enrollment form was initially provided as part of the packet of preemployment documents. Colon, the human-resources specialist, then wrote directly to Dr. Weinreb twice and specifically asked that he fill out the form. The first memorandum also requested that he complete a dental form, which he returned without mentioning the life-insurance form. Colon's follow-up phone call could only have emphasized to Dr. Weinreb that he was required to turn in the life-insurance form; he indicated he would, but did not. Colon's second reminder letter used the precise term "enrollment form," yet there was no response. By contrast, Dr. Weinreb promptly remitted an annuity enrollment form after human resources asked him for it.

Mrs. Weinreb points out that the Plan's enrollment form, unlike the other benefit forms, contained no specific warning or legend that stated that completion of the form was required for coverage. However, the form was unmistakably titled "Insurance Enrollment Form"; any contention that the form failed to communicate

that action on Dr. Weinreb's part was required is unavailing. The word "enroll" has a clear, everyday meaning that indicates the need affirmatively to sign up. *See* Webster's Collegiate Dictionary 385 (10th ed.1997) (defining "enroll" as follows: "to insert, register, or enter on a list, catalog, or roll"). While a formal warning on the form may have been preferable, the use of the term "enrollment" on the form coupled with the Hospital's repeated requests that Dr. Weinreb complete and submit the form—the last referring to the "enrollment form"—were easily sufficient to inform him of this requirement.

In sum, we agree with the district court that the several attempts that the Hospital made to secure Dr. Weinreb's completion of the enrollment form provided actual notice of the condition precedent at issue here:

> After two written memoranda and a phone call, no reasonable person in Dr. Weinreb's position could disclaim knowledge that completion of that form was a prerequisite to coverage, especially in light of the evidence that Dr. Weinreb twice responded to Gladys Colon's reminders by submitting other missing forms.

*Weinreb,* 285 F.Supp.2d at 387. Thus, the district court properly found that Mrs. Weinreb failed to raise any material issue of fact demonstrating likely prejudice from the absence of an SPD.

## II. Promissory–Estoppel Claim

█ Appellant's promissory-estoppel argument is similarly unpersuasive. A plaintiff must satisfy four elements to succeed on a promissory-estoppel claim: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 79 (2d Cir.1996). "Additionally, an ERISA plaintiff must adduce not only facts sufficient to support the four

basic elements of promissory estoppel, but facts sufficient to satisfy an extraordinary circumstances requirement as well." *Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 85–86 (2d Cir.2001) (internal quotation marks and some alterations omitted).

 Again, we agree with the district court that "at no point did the Hospital ever promise Dr. Weinreb that he would have life insurance even if he did not fill out the Enrollment Form." *Weinreb,* 285 F.Supp.2d at 388. The evidence Mrs. Weinreb proffers does not, in the aggregate, raise any genuine issue of material fact as to an explicit or implied promise to provide life-insurance benefits automatically—especially in light of the substantial evidence of actual knowledge of the enrollment requirement. The listings of benefits in the orientation checklists and related memoranda are at best ambiguous, and simply reflect the availability of insurance. Finally, although Dr. Weinreb's W–2 tax statements apparently included a cryptic line item that reflected the imputed income from life insurance, Mrs. Weinreb offered no evidence that her husband was aware of the meaning of these codes and, therefore, that they could evidence a promise upon which he relied. Similarly, we find unconvincing her argument that her husband allowed his AMA policy to lapse in reliance on these W–2 codes.[2]

## CONCLUSION

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

---

**2.** We find it telling that Dr. Weinreb's decision to allow the AMA policy to lapse roughly coincided with the period during which he likely made his decision to leave the employ of the Hospital. We also note that the more plausible inference to draw from the record evidence is that Dr. Weinreb ignored the Hospital's repeated requests that he complete the enrollment form because he had already signed up for this AMA plan.