**Donna C. RICHARDS, individually, and on behalf of others similarly situated, Plaintiff,**

v.

**FLEETBOSTON FINANCIAL CORP. et. al., Defendants.**

**Civil Action No. 3:04–cv–1638 (JCH).**

United States District Court, D. Connecticut.

Oct. 16, 2006.

Thomas G. Moukawsher, Ian O. Smith, Moukawsher & Walsh, Hartford, CT, for Plaintiff.

Anne E. Rea, Brian P. Guarraci, Erin E. Kelly, Julie A. Koca, Scott E. Gross, William F. Conlon, Sidley Austin LLP, Chicago, IL, George J. Kelly, Jr., Siegel, O'Connor, O'Donnell & Beck, Hartford, CT, for Defendants.

## RULING ON PLAINTIFF'S MOTION FOR AMENDED CLASS CERTIFICATION [DOC. NO. 155]

HALL, District Judge.

### I. INTRODUCTION

Plaintiff Donna C. Richards is an employee of defendant FleetBoston Financial Corp. ("FleetBoston"), a participant in the defendant FleetBoston Pension Plan ("Amended Plan"), and a former participant in Fleet's former pension plan, a traditional defined benefits plan ("Traditional Plan").[1] This Ruling presumes familiarity with the court's previous Rulings on class certification [Doc. No. 111] and on the defendants' motions to dismiss [Doc. Nos. 112 & 148]. The earlier Rulings described the terms of the Amended Plan that are at issue in this case and the ways in which they are alleged to have violated ERISA. In the Ruling on defendants' second motion to dismiss [Doc. No. 148], the court dismissed Count II of plaintiff's Amended Complaint [Doc. No. 124] and that part of Count V premised on the Summary Plan Description's ("SPD") lack of "an explicit explanation of how benefit accruals under the plan are reduced by advancing age."[2] Amended Complaint ("Am.Compl".) at ¶ 51. It denied the second motion to dismiss with respect to the remaining parts of Count V.

Richards seeks to amend the class certification granted by this court on March 31, 2006 [Doc. No. 111], which certified the proposed class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. With respect to Count V of her Amended Complaint alleging breach of fiduciary duty, Richards now wishes to also certify a class for this claim under Rule 23(b)(2). Additionally, she seeks to certify this lawsuit as a class action pursuant to Rule 23(b)(1)(A) and (B) as to all of those claims not previously dismissed by this court (Counts I (age discrimination), III (§ 204(h) notice), IV(SPD), and V (fiduciary duty)). Fleet not only objects to the plaintiff's proposed expansion of certification, but

---

1. Unless otherwise indicated, the defendants will be collectively referred to as "Fleet." Bank of America is also a defendant in this action.

2. Therefore, the court does not consider the arguments for and against class certification with respect to these counts.

also asks the court to amend its prior ruling so as to decertify the SPD class (Count IV) under Rule 23(b)(2).

As discussed in the court's previous Rulings, the Amended Plan uses hypothetical cash balance accounts to calculate retirement benefits for its participants. Each quarter, a certain amount is added to an employee's hypothetical cash balance account, calculated as the sum of a certain percentage of the portion of that employee's compensation that falls below the social security wage base, a higher percentage of the employee's compensation above the social security wage base, and an interest credit. For participants who had participated in the Traditional Plan before its amendment and who were not at least age 50 with 15 years of vesting service as of December 31, 1996, the Amended Plan calculates retirement benefits using a "greater of" formula. A retiring participant receives the greater of the "frozen" benefit derived from the Traditional Plan terms and the hypothetical cash balance account balance The frozen benefit is often larger than the opening hypothetical cash balance account, because the opening balance for the cash balance account is calculated as the frozen Traditional Plan benefit minus early retirement subsidies. The idea that an employee covered by these terms does not actually accrue any new benefits under the Amended Plan until the value of the hypothetical cash balance account exceeds that of the frozen Traditional Plan benefit is known as the "wear-away" effect. It is allegedly exacerbated by an actuarial assumption and interest rate used in calculating the opening balance of the cash balance account.

## II. STANDARD OF REVIEW

An order certifying a class "may be altered or amended before final judgment." Fed. R.Civ.P. 23(c)(1)(C). A district court also has the discretion to decertify a class by amending the order granting the certification, "if the court finds that certification should not have been granted or is no longer appropriate." 5 *Moore's Federal Practice* § 23.87(Matthew Bender 3d ed.). Richards bears the burden of showing that the class she has proposed meets the requirements for class certification. *See Caridad v. Metro–North Commuter Railroad,* 191 F.3d 283, 291 (2d Cir.1999); *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 484 (2d Cir.1995). In ruling on a motion for class certification at the present stage of the litigation, the court accepts the factual allegations of the Complaint as true. *Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978) (internal citations omitted). It may also consider affidavits that a plaintiff has submitted in support of her motion for class certification, *see id.,* and affidavits a defendant has submitted in opposition to the motion for class certification, *see, e.g., Panzirer v. Wolf,* 663 F.2d 365, 368–69 (2d Cir.1981), *vacated as moot, Price Waterhouse v. Panzirer,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982).

Before certifying a class, the court must conduct a "rigorous analysis" and be "persuaded that the prerequisites of Rule 23(a) have been met." *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

> Nevertheless, a motion for class certification is not an occasion for examination of the merits of the case. *See Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 570–72 (2d Cir.1982). As the Supreme Court has stated, "[N]othing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 ... (1974).

*Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir.1999). The Second Circuit has held that "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997) (internal citation omitted).

## III. DISCUSSION

As discussed in detail in this court's previous ruling on class certification [Doc. No. 111], in order to certify a class a litigant must satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure

and demonstrate that the proposed class action fits into one of the three categories under Rule 23(b). *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir.1968). In analyzing a class certification motion, "a judge must look somewhere between the pleading and the fruits of discovery." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571–72 (2d Cir. 1982). The court should accept the allegations in the complaint as true and should not conduct a preliminary inquiry into the merits of the case. *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999). Nonetheless, the plaintiff still bears the burden of establishing each requirement for class certification. *Id.* The plaintiff cannot rely solely on the allegations of the complaint, but must provide sufficient information on which the court can make a determination. *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. 2000) (" '[c]ertification ... is dependant on [the plaintiff's] proof that each of the requirements of Rule 23(a) ... has been met.' ")(quoting *Lloyd v. Indus. Bio–Test Lab, Inc.*, 454 F.Supp. 807, 811–12 (S.D.N.Y. 1978)). Before certifying a class, the district court must conduct a "rigorous analysis" and be "persuaded that the prerequisites of Rule 23(a) have been met." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

### A. Certification of Count V and Decertification of Count IV under Rule 23(b)(2)

#### 1. Rule 23(a)

The court assumes familiarity with the court's previous ruling which discussed in detail the four prerequisites to class certification under 23(a) of the Federal Rules of Civil Procedure. *See* Ruling on Def.'s Mot. to Cert. Class [Doc. 111] at 4–14. The four requirements under Rule 23(a) are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy." *See, e.g., Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d. Cir. 2000).

With respect to Richards' request to certify a class as to Count V of the Amended Complaint and Fleet's request to decertify the class under Count IV, the defendants do not contest that Richards has met her burden of proving numerosity. However, they argue that she has failed to meet her burden of showing commonality, typicality, and adequacy.

■ The commonality requirement is met if a plaintiff's grievances "share a common question of law or fact." *Marisol A.*, 126 F.3d at 376. Richards' Count IV alleges that the terms of the plan violated ERISA and her Count V claims that Fleet breached its fiduciary duty in its drafting of universally-distributed plan descriptions, benefit statements, and an employee reference guide. Since all class members participated in the Amended Plan at issue, the court finds that Richards has shown common questions of law. As the court discussed in its previous rulings, both Counts IV and V require a showing of "likely prejudice." *See* Ruling on Def.'s Second Motion to Dismiss [Doc. No. 148]; Ruling on Def.'s Mot. to Cert. Class [Doc. 111] at 11–12. Thus, the court remains unpersuaded by the defendants' argument that these Counts require individualized assessments into each potential class member's proof and defenses, as the "likely prejudice" showing may be satisfied by the terms of the plan itself. *See id.* Richards has not alleged disclosure failures specific to her, but rather failures that would affect all putative class members. For the reasons discussed in the court's earlier Ruling, the defects in disclosure themselves are significant enough to establish a presumption of likely prejudice, common to all members of the class, and this presumption has not been rebutted. *See Frommert v. Conkright*, 433 F.3d 254, 267 (2d Cir.2006) (quoting *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 112 (2d Cir.2003)).

Fleet cites *Weinreb v. Hospital for Joint Diseases Orthopaedic Institute*, 404 F.3d 167, 171–72 (2d Cir.2005), for the proposition that it can rebut the inference of likely prejudice with evidence that the alleged misrepresentations were harmless. However, in *Weinreb* the Second Circuit focused on the fact that the Hospital had told Dr. Weinreb on at least three different occasions to complete the required Insurance Enrollment Form, and thus " 'no reasonable person in Dr. Weinreb's

position could disclaim knowledge' " of this requirement. *Id.* at 172 (quoting *Weinreb v. Hospital for Joint Diseases Orthopaedic Institute*, 285 F.Supp.2d 382, 387 (S.D.N.Y. 2003)). Unlike in *Weinreb*, there is no evidence that any of the putative class members had "actual knowledge" of the full impact of the cash balance plan prior to the effective date of change. *See* Am. Compl. at ¶¶ 39–43.

Fleet further argues that Richards' assertions that she was not sufficiently informed about the wear-away effect in the SPD and that she was further misled about it in an employee reference guide or participant benefit statement are "not the sort of easily addressed administrative matters that are the source of the disputes in the typical case involving the likely prejudice standard." Def.'s Mem. in Opp. at 6. However, Fleet cites no case law that would support the proposition that the "likely prejudice" standard *requires* that the plaintiff suffer an injury attributable to some administrative failure. While the defendants may be correct in stating that the court cannot "presume" that all of FleetBoston's employees would have terminated their employment "en masse," such an argument is irrelevant at the class certification stage, where a court is not permitted to conduct an inquiry into the merits of the case. *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999). At this stage, the court finds that the defects in disclosure are significant enough to establish a presumption of likely prejudice, common to all members of the class.

■ The defendants' emphasis on the need for an employee-by-employee analysis is apparently explained by their assumption that some members of the proposed class are better off under the Amended Plan than they would be under the Traditional Plan and that it would be improper to bind them to a non-opt-out class. In support of this argument, the defendants have submitted a declaration by Christopher Bone, *see* Def.'s Mem. in Opp. at Ex. A, an actuary who has reviewed documents concerning some subset of plan participants. Bone looked at the pension plans and the employment records of "thousands, but not all, of the 25,000 + individuals who are members of the class that Plaintiff

seeks to certify," and concluded that over one thousand nine hundred employees have received greater benefits under the Amended Plan than they would have received in the absence of the 1997 plan amendment. He has provided profiles of thirteen such individuals. *See* Def.'s Mem. in Opp. at Ex. A, ¶ 4.

Fleet argues that because expert discovery is complete and both sides have completed their experts' reports, Bone's Declaration may be considered by the court in determining whether the class should be certified. The defendants rely on *Heerwagen v. Clear Channel Communications*, 435 F.3d 219, 232–33 (2d Cir.2006), which allowed the consideration of expert testimony if it is directed toward determining whether the elements of Rule 23 have been met. However, *Heerwagen* also emphasized that a court cannot weigh evidence in determining Rule 23 certifications "to the extent those determinations are effectively identical to the merits issues." *Id.* at 232. The Second Circuit stated that in that case the finding, based on expert testimony, that individual issues would likely predominate "did not depend on the validity of plaintiff's claim or of the potential claims of other members of the putative class." *Id.* Affirming the denial of class certification, the court stated that in the monopolization claim at issue the plaintiff was required to delineate specific (local) geographic markets, instead of a national market, and thus would have to "rely on market-specific evidence of Clear Channel's power in particular markets that will vary from one putative class member to another." *Heerwagen*, 435 F.3d at 229. Unlike *Heerwagen*, this case involves one particular retirement plan that was not affected by geographic or other employee-specific inquiries, and thus relying on the expert evidence in this case would lead too far toward an inquiry into determining the merits of Richards' claim, which a court cannot do at the class certification stage. *See id.* at 231.

The court does note that Richards has not pled that every class member actually suffered financially from the effects of the alleged ERISA violations. However, Bone does not explain in any detail the calculations or assumptions he used to arrive at the con-

clusion that a number of participants benefitted financially under the Amended Plan, and the court cannot determine at this stage in the litigation whether or not all class members in fact experienced the wear-away effect for some period of time. The court reasonably can infer from the complaint and plan documents that the wear-away effect does apply to all putative class members, because the "greater of" benefit formula that Richards alleges to cause the wear-away effect applies to all putative class members. *See* Am. Compl. ¶¶ 33–37. Therefore, for purposes of the class certification motion, it finds that Counts IV and V allege a violation of the rights of all putative class members.

Moreover, in spite of Bone's findings, and even if some class members would prefer to receive the greater benefits afforded them by the Amended Plan, with its alleged violations of ERISA, than to receive benefits that they would have received had Fleet kept the Traditional Plan in place, the court need not exclude those individuals from a class that is created to vindicate their ERISA-created rights. *See* Ruling on Def.'s Mot. to Cert. Class at 8–9 (discussing the adequacy requirement under Rule 23(a)) [Doc. No. 111]. Even if the court could assume at this stage in the litigation that some class members do prefer the benefits received under the Amended Plan, a question it does not decide, this conclusion would go only toward the question of which remedy class members would seek, which does not affect the viability of the class at this stage in the litigation. *See Amara v. CIGNA Corp.* No. 3:01 CV2361 (DJS), 2002 WL 31993224, at *2, 2002 U.S. Dist. LEXIS 25947, at *6–*7 (D.Conn. Dec. 20, 2002) (recognizing that "providing the relief requested in the complaint on a class-wide basis may actually harm some members of the class … this problem can be addressed when the court determines what remedy should be provided if plaintiff prevails on the merits of her claims").

■ Fleet also argues that misrepresentations on Richards' July 2, 2004 benefit statement cannot form the basis of a class-wide breach of fiduciary duty claim. However, even though this statement was prepared for Richards in response to a request by her attorney, the language in her Amended Complaint indicates that she is using her statement as an example of what other similarly situated plan participants received ("upon information and belief, when plan participants have asked administrators for statements of the retirement benefits they have earned, the administrators give them materially misleading documents that list the balance in participants' hypothetical accounts as their 'accrued benefits' while concealing their frozen benefits even when these benefits are greater than the cash balance benefits"). *See* Am. Compl. at § 143.

As to the typicality requirement, it is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Walker v. Asea Brown Boveri, Inc.,* 214 F.R.D. 58, 63 (quoting *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997)). "Differences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *Ouellette v. Int'l Paper Co.,* 86 F.R.D. 476, 480 (D.Vt.1980) (citing *Sanders v. Faraday Laboratories, Inc.,* 82 F.R.D. 99, 101 (E.D.N.Y.1979)) (holding that "[p]roof of defendant's liability … will benefit all members of the proposed classes, *Eisen [v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968)]; that the damages, if any, may reach a de minimis level at some point among the class members does not make the named plaintiffs' claims atypical"). The court finds that each class member's claim arises from the same course of events and that each makes similar legal arguments to prove the defendants' liability.

■ Finally, the adequacy inquiry under Rule 23(a)(4) "requires courts to ask whether plaintiff's interests are antagonistic to the interest of other members of the class." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 142 (2d Cir.2001) (internal citation and quotation marks omitted). The defendants argue that the plaintiff-specific nature of the SPD and fiduciary misrepresentation claims render Richards an inadequate class representative. They argue that the relief Richards is seeking is "either du-

plicative of relief for other claims or entirely pointless." *See* Def.'s Mem. in Opp. at 11. They presented a declaration by their expert, Christopher M. Bone, that disputes Richards' assumption that she has continued to experience wear-away continuously since 1997, as they maintain she only experienced it in short periods in 1999. *Id.* & n. 7. Thus, they argue that Richards has not shown any need for requiring Fleet to provide different disclosures or to send a § 204(h) notice, especially considering that the Amended Plan has been in effect for nine years and the relief requested would "benefit no class member in any meaningful fashion." *Id.* However, the court finds that these objections do not render Richards an inadequate class representative, for her claims are premised on the terms of the plan and failures of disclosure and misrepresentation, and she states claims for benefits to which the potential class members were entitled. As "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal citation omitted), the fact that Richards or other class members may not meaningfully benefit from any remedy does mean that representation is necessarily inadequate.

Although Fleet is correct in pointing out that a judgment on the merits of the SPD or fiduciary duty claims is *res judicata* on all claims that could have been brought individually, the court does not agree that the decision to certify the class would foreclose any individual's damages. Indeed, as the court emphasized in its prior ruling, the question of remedies is not appropriate for resolution at this stage in the litigation. Moreover, disagreement as to the type of damages sought does not mean that representation is inadequate. *See, e.g., Walsh v. Northrop Grumman Corp.,* 162 F.R.D. 440, 447 (E.D.N.Y. 1995) (quoting *Robertson v. National Basketball Ass'n,* 389 F.Supp. 867 (S.D.N.Y.1975) (holding that, even though different plaintiffs sought different types of damages, "all players, past and present, seek damages for the same acts")); *Ouellette v. Int'l Paper Co.,* 86 F.R.D. 476, 480 (D.Vt.1980) (holding that the

contention that "issues going to proof of damages" would create antagonism among class members was "easily disposed of by noting that there is no necessity that all issues be tried in one proceeding. The class aspects may be tried before the individual damage claims, if that should prove necessary."). Furthermore, as part of its continuing duty to assure adequacy of representation in a class action suit, *see Key v. Gillette Co.,* 782 F.2d 5, 7 (1 st Cir.1986), the court may always decide to modify or decertify the class in the future, thus assuring that no subset of the class would be deprived of due process as this case goes forward, even though Richards asks the court to certify a class that would not permit members to opt out.

The court finds, for the foregoing reasons and on the basis of her asserted knowledge of the issues at stake in the litigation, that Richards has satisfied the requirements of Rule 23(a).

### 2. Rule 23(b)(2)

As discussed in the court's previous ruling, *see* Ruling on Def.'s Mot. to Cert. Class [Doc. 111] at 14–21, Rule 23(b)(2) provides for class litigation where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2).

While Richards seeks injunctive and declaratory relief, the defendants argue that such relief is duplicative or too late to be meaningful, and unjustifiably forecloses the potential ability of individuals to seek individual recoveries. *See* Def.'s Mem. in Opp. at 12. However, these are not persuasive arguments against certification under Rule 23(b)(2), especially as that subsection only requires that "the party opposing the class has acted or refused to act on grounds *generally applicable* to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2) (emphasis added). Thus, based on the defen-

dant's conduct described in the complaint, the court may infer that most of the putative class members would benefit from at least some injunctive relief if the plaintiff prevails.

For all of the reasons set forth in its prior Ruling on class certification, the court finds that certification of the proposed (b)(2) class as to Counts IV and V to be appropriate.

## B. Certification of all Counts under Rule 23(b)(1)

■ Richards also seeks to extend certification to a class under Rule 23(b)(1). Rule 23(b)(1)(A) covers cases in which multiple suits would create a risk of inconsistent adjudications or would possibly establish incompatible standards of conduct for the party opposing the class, and Rule 23(b)(1)(B) covers cases in which individual actions would, as a practical matter, conclude the interests of other members of the class or preclude their ability to protect their own interests. *See* Fed.R.Civ.P. 23 Advisory Committee's Note to 1966 amendment, subdivision (b)(1).

The proposed class is well-suited to be certified under Rule 23(b)(1)(A). Rule 23(b)(1)(A)'s language, addressing "inconsistent adjudications," is broad. It could arguably encompass all class actions, but it has not been applied in that manner. *See 2 Newberg on Class Actions*, § 4.4, at 14 (4th ed.2002). "The fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A)." *In re Bendectin Prod. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir.1984).

Instead, courts generally apply Rule 23(b)(1)(A) restrictively, to classes where there is a statutory obligation to treat all class members alike, such as cases involving a statutory assessment or the duties of a riparian landowner to downriver property owners, where both injunctive and monetary damages are sought. 2 Newberg § 4.8, at 26; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846–47, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). This court has also given as an example "a (b)(1)(A) ERISA suit involving the application of an ERISA-covered plan to a number of employees." *Petrolito v. Arrow Financial Servs., LLC*, 221 F.R.D. 303, 313 (D.Conn.2004); *see also Piazza v. EBSCO Indus., Inc.*, 273 F.3d 1341 (11th Cir.2001).

The proposed class members number in the thousands. Because all have allegedly suffered the same statutory violations, this class is well-suited to certification under Rule 23(b)(1)(A). Although their individual damages may differ, this fact would not prevent formation of a(b)(1) class where the underlying legal claims are the same.

In opposition, Fleet argues that there is no reason to believe that multiple claims will be brought for these violations in the absence of class certification. They argue that, in the past nine years, no claims have been brought by any of the putative class members for these alleged violations. *See* Def.'s Mem. in Opp. at 13. They also claim that the Pension Protection Act of 2006, which protects cash balance plans from possible liability for age discrimination, makes it highly unlikely that any lawsuits will be brought in the future. *See id.* However, the Act does not appear to apply retroactively. *See* 120 Stat. 780, at § 701; *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (holding that "absent clear congressional intent," a statute enacted after the events at issue in a lawsuit would not apply to that lawsuit if "the new statute would have retroactive effect, *i.e.*, [if] it would impair rights a party possesses when [it] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"). Moreover, courts, including "[t]he Second Circuit itself ... [have] noted that the absence of other lawsuits is meaningless in determining the interest of absent class members in the controversy." 2 Newberg § 4.6, at 21. Although it is true that some courts have indeed refused to certify a class under subsection (A) where no separate actions have been brought against the party opposing the class, *see, e.g., Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A.*, 55 F.R.D. 26, 30 (S.D.N.Y.1972) (antitrust), "speculation that other suits will not be filed is not generally supportable as a reason for denying a Rule 23(b)(1)(A) class." 2 Newberg § 4.8, at 26.

Moreover, even if claims have not been brought in the past, Richards has adequately

alleged that many similarly-situated individuals have suffered from the same statutory violations as she has, and it is quite likely that Richards' suit could encourage other plan participants to commence litigation. Because Richards' claims are premised on statutory violations caused by the plan terms themselves, and because she seeks injunctive relief, inconsistent rulings on these claims by different courts could create an untenable situation. Considering that "Rule 23 be given a liberal construction with error, if any, on the side of certification." *Robertson v. National Basketball Ass'n,* 389 F.Supp. 867, 902 (S.D.N.Y.1975), and as the class satisfies the Rule 23(a) requirements as well as the Rule 23(b)(1)(A) requirements, the court grants the motion to certify the class under Rule 23(b)(1)(A).

█ As for class certification under Rule 23(b)(1)(B), that subsection applies in any situation "where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter." Fed.R.Civ.P. 23 Advisory Committee's Note to (b)(1)(B). "Classic examples" of cases suitable for certification under Rule 23(b)(1)(B) include:

> suits brought to reorganize fraternal-benefit societies, actions by shareholders to declare a dividend or otherwise to fix their rights, and actions charging a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust. In each of these categories, the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members.

*Ortiz,* 527 U.S. at 834, 119 S.Ct. 2295 (internal citations, quotation marks, and brackets omitted).

Rule 23(b)(1)(B) is typically applied in limited fund cases, *see Dobson v. Hartford Life & Accident Ins. Co.,* 2006 WL 861021, at *7, 2006 U.S. Dist. LEXIS 14922, at *23 (D.Conn.2006); there is no such allegation of limited defendant resources here. While limited fund cases are not the only cases that can be certified under this subsection, the court finds that plaintiff's claims are not of the sort typically certified under Rule 23(b)(1)(B). Its decision in this regard is informed in party by its certification of a class under Rule 23(b)(1)(A) and Rule 23(b)(2).[3]

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part the plaintiff's Amended Motion for Class Certification and certifies the proposed class pursuant to Rule 23(b)(2) and Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure. It also DENIES defendants' request to decertify the SPD class (Count IV) under Rule 23(b)(2).

**SO ORDERED.**

---

**3.** "There is no real litigation significance whether the court certifies the class under Rule 23(b)(1)(A) or (b)(1)(B) or both. Certification under either of these two provisions will not trigger any special class provisions in other parts of Rule 23 relating to notice or right of exclusion, and each subsection will permit class suits seeking injunctive relief or damages or both. Court certification of a class under either Rule 23(b)(1)(A) or (b)(1)(B) makes no difference." 2 Newberg § 4.8, at 30.